IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| YVONNE JACOB, | ) | CASE NO. 1:10-CV-1610 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE KATHLEEN M. O'MALLEY |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Yvonne Jacob's ("Plaintiff" or "Jacob") application for Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I. INTRODUCTION & PROCEDURAL HISTORY

On May 16, 2006, Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits and Supplemental Security Income alleging that she became disabled on December 2, 2004, due to suffering a stroke in December of 2004, battling problems with partial movement of her left side, her kidneys, and bipolar disorder (Tr. 84- 92, 117). Plaintiff's date last insured for purposes of her Disability Benefits application was December 31, 2009 (Tr. 127).

Plaintiff's applications for benefits were denied initially and upon reconsideration (Tr. 43-46). Plaintiff timely requested and was granted an administrative hearing (Tr. 66-69). On July 8, 2008, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge O. Price Dodson (the "ALJ" or "ALJ Dodson") (Tr. 19-42). The hearing was conducted via video; Plaintiff appeared in Erie, Pennsylvania and the ALJ appeared in Norfolk, Virginia (Tr. 10). Testifying at the hearing were Plaintiff and Ms. Edwards, the vocational expert (Tr. 19-42).

The ALJ issued a written decision on August 11, 2008, in which he applied the five-step sequential evaluation,[1] and determined that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of sedentary work existing in significant numbers in the national economy and, therefore, was not disabled (Tr. 19-42). On August 27, 2008, Plaintiff requested review of the

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

> (1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.
>
> (2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.
>
> (3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> (4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.
>
> (5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

ALJ's decision from the Appeals Council (Tr. 5-6).[2] On November 6, 2008, before the Appeals Council issued a decision, Plaintiff submitted a copy of an RFC assessment form completed by her treating physician, Dr. Hofius, to the Appeals Council (Tr. 565-71). Plaintiff did not present this evidence to the ALJ at the hearing. In her letter to the Appeals Council, Plaintiff alleged that Dr. Hofius' RFC assessment was completed on September 29, 2008 (Tr. 565).

While the Appeals Council's review was pending, Plaintiff filed a second application for benefits alleging an onset date of December 1, 2008 (Pl.'s Br. at 1-2). The application was approved, and on January 27, 2010, Plaintiff notified the Appeals Council of the favorable decision and requested that her award of benefits be extended back to an onset date of May 26, 2005, or that her request for remand be granted (Pl.'s Br. at 2). On May 25, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's determination the final decision of the Commissioner (Tr. 1-3). Plaintiff now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff, born on July 14, 1965, was forty-two years old at the time of the hearing, and considered a younger individual for Social Security purposes (Tr. 16). She has a high school education and past relevant work experience as a case worker and a dry-cleaning presser (Tr.16, 39).

## II. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42

---

[2]Plaintiff submits that her request for review was filed on September 14, 2008, but the record reflects that the request was received by the Social Security Administration on August 27, 2008 (Tr. 5-6).

U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§ 404.1505, 416.905.

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See* *Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See* *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See* *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See* *Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See* *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. ANALYSIS

After reviewing the evidence of record, ALJ Dodson determined that Plaintiff was not disabled (Tr. 10-18). On August 11, 2008, the ALJ issued his written opinion stating that Plaintiff suffered from two severe impairments: left hemiparesis secondary to a cerebrovascular accident and bipolar disorder (Tr. 12). However, the ALJ concluded that Plaintiff's severe impairments did not individually or in combination meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13-14). Next, ALJ Dodson found that Plaintiff retained the RFC:

> to lift and carry 10 pounds using her dominant right arm/hand, walk or stand for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. The claimant can perform tasks allowing her to use a cane for ambulation. The claimant can perform tasks requiring no lifting, pushing or pulling with the left upper and lower extremities or any functional use of her non-dominant left upper extremities. The claimant can perform simple, routine and repetitive tasks.

(Tr. 14). The ALJ found that although Plaintiff could not perform her prior work as a dry-cleaner presser, cashier or case worker, she maintained the ability to perform work as an order clerk, or a surveillance systems monitor (Tr. 16-17).

The RFC assessment allegedly completed by Dr. Hofius, Plaintiff's treating physician, indicates that Plaintiff can lift less than ten pounds occasionally, less than ten pounds frequently, sit for less than two hours in an 8-hour workday, has a limited ability to push and/or pull in both her upper and lower extremities, comments that Plaintiff's condition was "severe with worsening of weakness and malnutrition", and that Plaintiff is currently in a wheelchair (Tr. 567). The physician explained his findings stating, "patient with worsening health/decline weakness and weight loss and now only minimally ambulatory and unable to work in any capacity currently[]" (Tr. 567).

Jacob asserts that the Commissioner's decision denying her application for benefits should be remanded because: 1) the evidence submitted to the Appeals Council was new and material; and 2) the Commissioner failed to preserve and maintain a complete record of the proceedings (Pl.'s Br. at 2). Plaintiff requests this Court to reverse the ALJ's decision denying benefits, or alternatively, to remand the case to the ALJ for consideration of the new material evidence presented to the Appeals Council (Pl.'s Br. at 13).

Sentence six of 42 U.S.C. § 405(g) permits a court to remand a case back to the ALJ for consideration of new evidence under certain circumstances. 42 U.S.C. § 405(g) states in pertinent part:

> . . . The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .

42 U.S.C. § 405(g).

The Sixth Circuit has interpreted this statute as creating three requirements to warrant remand for consideration of additional evidence. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711-713 (6th Cir. 1988); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). First, the claimant must submit evidence that is *new*. "New evidence must indeed be new; it cannot be cumulative of evidence already in the record." *Elliot v. Apfel*, 28 F. App'x 420, 423 (6th Cir. 2002). Second, the evidence must be *material*. To satisfy this burden, the claimant must "demonstrate that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. Third, the claimant must show *good cause* exists for her failure to include the evidence in a prior proceeding. *Delgado v. Comm'r of Soc. Sec.*, 30 F.

App'x 542, 549 (6th Cir. 2002).

When these three requirements are met, it is proper for the court to order a remand. However, the Court may not reverse an ALJ's decision on the basis of evidence first submitted to the Appeals Council. *Cotton*, 2 F.3d at 696. In cases such as the instant case, where the new evidence was submitted to the Appeals Council, and the Appeals Council declined the claimant's request for review, the court's role is to review the ALJ's decision and determine whether it is supported by substantial evidence in the record at the time the ALJ issued his decision. *Id*.

Because Dr. Hofius' RFC assessment was first presented to the Appeals Council, and not to ALJ Dodson, this Court may not reverse the ALJ's decision. *See Cotton*, 2 F.3d at 696. Therefore, the Court declines Plaintiff's request for such relief. However, alternatively, Plaintiff seeks remand in order for the ALJ to consider the effect that Dr. Hofius' RFC assessment would have had upon the ALJ's disability determination. Accordingly, the Court will discuss whether Dr. Hofius' evaluation warrants remand under sentence six of 42 U.S.C. § 405(g).

**A. Whether Dr. Hofius' Report Satisfies The Elements Of 42 U.S.C. § 405(g)**

1. New

The first of the three requirements to warrant remand demands Plaintiff to show that the evidence is new. *Sizemore*, 865 F.2d at 711. Plaintiff avers that Dr. Hofius' evaluation is new evidence because it was completed on September 29, 2008, nearly two months after the ALJ issued his unfavorable decision (Pl.'s Br. at 11). However, as Defendant notes, it is unclear when this assessment was completed, or by whom it was completed. The face of the document does not reveal a completion date (Tr. 566-71). Additionally, there is no reference to Dr. Hofius on any of the six

pages contained in the report (Tr. 566-71). Also troubling is the fact that the second page of the report appears to evidence the penmanship of two different persons (Tr. 567). For example, the writing in section four, describing Plaintiff's ability to sit as being limited to less than two hours in an eight hour workday is substantially different than the writing contained throughout the remainder of the assessment (Tr. 566-71).

In disability cases, the claimant bears the ultimate burden of establishing her disabled status. *Cotton*, 2 F.3d at 695 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)). Plaintiff has not come forward with any evidence to support her assertion that the report in question was actually completed by Dr. Hofius. Likewise, Jacob has failed to provide the Court with any proof that this evaluation was written on September 29, 2008. The date the evaluation was completed is critical to Plaintiff's request for remand pursuant to 42 U.S.C. § 405(g), as only *new* evidence triggers the necessity for remand. Additionally, it appears that all of the information relied upon in Dr. Hofius' report was available prior to the hearing, further demonstrating that it is not new evidence. *See Delgado*, 30 F. App'x at 549. Thus, Plaintiff's burden of demonstrating that the evidence is new is wanting.

2. Material

Although the Court finds that Plaintiff has failed to show that the RFC in question was penned by Dr. Hofius, or on what date it was so done, for purposes of *arguendo* the Court will address the remaining two factors evaluated prior to issuing an order to remand pursuant to 42 U.S.C. § 405(g). In order to warrant remand for consideration of new evidence, the claimant must demonstrate "that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence. *Sizemore*, 865 F.2d

at 711. Plaintiff argues that there is a reasonable probability that ALJ Dodson would have come to a different conclusion regarding Plaintiff's RFC had the ALJ considered Dr. Hofius' findings. More specifically, Plaintiff contends that the "treating source rule" would have compelled the ALJ to give Dr. Hofius' opinions controlling weight.

Under the treating source doctrine, the ALJ is admonished to assign more weight to the opinions of a physician who has treated the claimant over a significant amount of time, than to other sources who do not have a longitudinal picture of the claimant's medical history. 20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In fact, the ALJ "must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson*, 378 F.3d at 544 (*citing* 20 C.F.R. § 404.1527(d)(2)). However, "it is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported . . . or if it is inconsistent with other substantial evidence in the case record." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (*citing* SSR 96-2p, 1996 WL 374188, at * 2 (July 2, 1996)). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, the ALJ must still determine what weight to give the doctor's opinion and state good reasons for the assignment of weight deemed appropriate. *Id*.; *Wilson*, 378 F.3d at 544.

The issue now before the Court is whether it is reasonably probable that the application of this rule would have led the ALJ to a different conclusion had he been privy to Dr. Hofius' assessment. The Court finds that it is not likely that a review of Dr. Hofius' report would have caused the ALJ to come to a different conclusion. There are several reasons for this decision. First,

it does not appear that Dr. Hofius' findings would have been entitled to controlling weight under the treating source doctrine. In order to afford such weight to a doctor's opinion, the opinion must be well-supported by objective medical evidence and not inconsistent with other evidence in the record. *Wilson*, 378 F.3d at 544. In the case *sub judice*, Dr. Hofius' findings do not meet either of these requirements.

To begin, there is no objective medical evidence to support the doctor's findings.[3] Although Dr. Hofius opined that Plaintiff could only lift or carry less than ten pounds and that she had a limited ability to push or pull in her upper and lower extremities, there is no evidence in the record to support Dr. Hofius' opinion as it relates Plaintiff's functional abilities to use her right upper and lower extremities. Dr. Hofius' report does not cite to any testing or screening used to conclude that Plaintiff was limited with her right extremities. Neither does Plaintiff successfully point to any medical evidence to support such a restriction in the use of her right extremities. Instead, Plaintiff contends that her diagnosis of osteopenia contributed to her weakness in her right upper extremity (Pl.'s Br. at 10). However, this notion is faulty as Plaintiff's diagnosis of osteopenia affected her left hip, not her right arm (Tr. 560). The ALJ also recognized that there was "no evidence of any significant weakness in the claimant's right upper or lower extremities" (Tr. 15).

Dr. Hofius' opinions also fail the second prong of the treating source doctrine because they are not consistent with other substantial evidence in the record. For example, after Plaintiff suffered

---

[3]The Court recognizes that Dr. Hofius' alleged assessment is somewhat ambiguous because it does not clearly indicate whether the restrictions identified in Plaintiff's upper and lower extremities under the Exertional Limitations section relate to her right or left extremities. Because there is no language limiting the doctor's opinion to one side of Plaintiff's body, the Court will interpret the report under its plain meaning and analyze it as a limitation of both Plaintiff's right and left extremities. This is the same interpretation that Plaintiff gave the report.

her stroke in 2004, her medical records show that she complained of weakness on her left side (Tr. 233, 436-37). However, her right extremities were of normal strength and had no limitations (Tr. 233, 436). Furthermore, state agency physician, Dr. Rebecca Neiger, also commented that Plaintiff had restricted use of her upper left extremity and problems involving the left side of her body, but retained full use of her right upper extremity (Tr. 386-88). According to Dr. Neiger's notes, Plaintiff even admitted that because the left side of her body experienced paralysis, she often had to use the right side of her body to make up for the difference (Tr. 390). Because there is sufficient evidence in the record demonstrating that Jacob still had functional use of her right extremities, Dr. Hofius' finding to the contrary is inconsistent with the substantial evidence in the record. Therefore, the ALJ would not have been obligated to assign controlling weight to Dr. Hofius' opinions under the treating source doctrine.

Next, Plaintiff argues that even if the ALJ had not assigned controlling weight to Dr. Hofius' opinions, the ALJ would have found Plaintiff to be slightly more limited than his original RFC indicated, and the vocational expert (the "VE") would probably have not been able to find any jobs that Plaintiff could perform (Pl.'s Br. at 9-10).[4] This argument is also rejected by the Court. Upon review of Jacob's medical record, the ALJ confirmed that there was ample evidence in the record demonstrating that Plaintiff suffered from left-sided weakness following her stroke (Tr. 14). However, the ALJ also noted that Plaintiff's left-sided weakness did not prevent her from walking,

---

[4]Plaintiff also maintains that the Commissioner erred by failing to provide any reasons for the dismissal of Dr. Hofius' opinions. Plaintiff's argument is misplaced. The ALJ was not privy to Dr. Hofius' report and therefore could not assign any weight to the opinion or provide reasons for rejecting it. Although Plaintiff submitted Dr. Hofius' report to the Appeals Council, it declined Plaintiff's request to review the ALJ's decision. Thus, it had no duty to make any affirmative findings in relation to Dr. Hofius' assessment.

albeit with a cane (Tr. 14). In fact, at the hearing, Plaintiff confirmed that she could walk with the aid of a cane, and only used a wheelchair when she traveled to places that required excessive walking, such as the shopping mall (Tr. 36). Conversely, Dr. Hofius opined that Jacob was only minimally ambulatory and was unable to work in any capacity (Tr. 567). Dr. Hofius' finding is drastically different than the evidence in the record and the testimony offered from Plaintiff herself. Moreover, a physician's opinion as to the ultimate question of disability is not entitled to any special deference. *Payne v. Comm'r of Soc. Sec.*, No. 08-4706, 2010 WL 4810212, at *2 (6th Cir. Nov. 18, 2010) (*citing* 20 C.F.R. § 404.1527(e) & (e)(3)) ("a statement by a medical source that the claimant is 'unable to work' is not a 'medical opinion'; rather, it is an opinion on an 'issue reserved to the Commissioner . . . [and] as a matter of law, 'not given any special significance'"). The ALJ, rather than any physician has the final responsibility for determining a claimant's RFC based on the evidence as a whole. 20 C.F.R. §§ 416.946(c) & 416.927(e)(2). Thus, it is not likely that the ALJ would have found Plaintiff to be significantly more restricted after reviewing Dr. Hofius' RFC assessment.

The ALJ posed a hypothetical to the vocational expert describing a person who would not be able to use her non-dominant upper extremity for lifting, pushing or pulling, but would have full use of her dominant side extremities, would require the use of a cane to walk, and would be limited to sedentary work (Tr. 39-40). In response, the VE identified two jobs that such an individual would be able to perform: an order clerk and a surveillance system monitor (Tr. 40). Plaintiff has failed to convince this Court that anything cited in Dr. Hofius' evaluation would convince the ALJ to alter his hypothetical in a manner that would prevent the VE from identifying any jobs that such an individual could perform. As a consequence, Plaintiff has failed to show that Dr. Hofius' report is

material under 42 U.S.C. § 405(g) in order to necessitate remand.

Because Jacob now receives disability benefits, it is clear that she has established her disability status as of December 1, 2008, the onset date listed on her second application (Pl.'s Br. at 2). However, this fact alone does not confirm that she was disabled as of December 2, 2004, the alleged onset date of Plaintiff's disabled status in the instant case, or as of May 25, 2005, the date to which Plaintiff requested the Appeals Council grant her retroactive benefits (Pl.'s Br. at 1-2). Dr. Hofius' report may well be evidence that Plaintiff's condition had worsened by September of 2008, but it does not indicate at what point in time Plaintiff's symptoms became disabling. *See Sizemore*, 865 F.2d at 712 ("Evidence which reflected the applicant's aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began."); *see also Elliot v. Apfel*, 28 F. App'x 420, 425 (6th Cir. 2002). In fact, Plaintiff took the appropriate action here, by filing a second application for benefits once she secured sufficient evidence to show that she had become disabled as of December of 2008. *See id*. ("[The] appropriate remedy . . . [is] to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment.").

3. Good Cause

Lastly, Plaintiff has failed to show good cause for failing to submit Dr. Hofius' report to the ALJ at the hearing. 42 U.S.C. § 405(g) states that the Court may issue a remand for consideration of new material evidence if "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." In a footnote, Jacob asserts that "[d]espite diligent efforts, counsel was unable to procure the RFC prior to the hearing" and that "counsel had no control over the timing of Dr. Hofius' submission[]" (Pl.'s Br. at 4). Plaintiff also purports that her submission of the new

evidence to the Appeals Council fulfilled her duty to submit the evidence in a prior proceeding.

Plaintiff's argument is not well-taken. In order to satisfy the good cause requirement of 42 U.S.C. § 405(g), the claimant must give a valid reason for its failure to obtain evidence prior to the ALJ's hearing. *Merrimon v. Astrue*, No. 3.08-1137, 2010 WL 3893703, at *8 (M.D. Tenn. Sept. 30, 2010); *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964 (6th Cir. 1986). Furthermore, the Sixth Circuit has noted that the "good cause requirement [is] not met where [the] claimant did not request at [the] ALJ hearing that the record remain open until additional evidence could be submitted." *Delgado*, *supra*, 30 F. App'x at 549 (*citing* *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)). Plaintiff's submission of the evidence to the Appeals Council did not satisfy her duty to incorporate the evidence into the record in a prior proceeding. Accordingly, the Court finds that Plaintiff's failure to request that the record remain open until she could acquire Dr. Hofius' report is fatal. "The burden of providing a complete medical record rests with the claimant[,]" (*Weeks v. Shalala*, 65 F.3d 169 (6th Cir. 1995) (Table)) and Plaintiff has failed to offer any good explanation as to why Dr. Hofius' report could not have been obtained prior to the hearing. *See Willis*, 727 F.2d at 554.

**B. Whether Inaudible Portions Of The Transcript Warrant Remand**

Finally, Plaintiff submits that remand is proper because portions of the transcript from the hearing were deemed inaudible and are not available for this Court to review. Specifically, Plaintiff argues that portions of the VE's testimony are listed in the transcript as inaudible and prevent Plaintiff and this Court from evaluating the VE's opinion with regard to the hypothetical questions posed by the ALJ at the hearing (Pl.'s Br. at 12). While the Court acknowledges that there are several instances where pertinent testimony exchanged between the parties is listed as inaudible, the

Court nevertheless finds that the transcript is not so lacking as to warrant remand.

The case *sub judice* is distinguishable from other cases which necessitated remand due to the inaudibility of the administrative hearing's transcript. For example, in *Pratts v. Chater*, 94 F.3d 34 (2d Cir. 1996), the Second Circuit remanded a case after finding that the transcript of the hearing omitted the testimony of the only medical expert which testified, especially since this was the testimony on which the ALJ most relied in evaluating the medical evidence in the record. Additionally, in *Mullen v. Sec'y of Health & Human Servs.*, 878 F. Supp. 682 (D. Del. 1995), a district court ordered remand where three minutes of a twelve minute hearing were untranscribed, and there were additional instances in the remaining nine minutes where testimony was listed as inaudible. Conversely, in the case now before the Court, the overwhelming majority of Jacob's hearing is transcribed (Tr. 21-42). There are only small segments which are listed as inaudible (Tr. 39-41). Moreover, the inaudible segments did not prevent the ALJ from discerning the meaning of the missing portions, and likewise do not prevent this Court from conducting a thorough review.

The ALJ's decision was based upon a hypothetical that was properly transcribed in the record (Tr. 39-40). After reading the transcript, it is clear that the VE's identification of jobs was referencing the abilities an individual who had the ability to do no lifting, pushing or pulling with her non-dominant side, full use of her dominant side, and used a cane to walk (Tr. 40). Based on a review of the record, and the evidence discussed above, the Court finds that the ALJ's decision is supported by substantial evidence, and is not undermined by the missing portions of the hearing transcript.

## V. DECISION

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner, that Plaintiff was not disabled, is supported by substantial evidence. Accordingly, the Court recommends that the decision of the Commissioner be **AFFIRMED**.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: January 27, 2011.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).